**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| AVIS FARMER, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 19-1631 (RC) |
| | : | | |
| v. | : | Re Document No.: | 6 |
| | : | | |
| AMERICAN FEDERATION OF | : | | |
| GOVERNMENT EMPLOYEES, | : | | |
| | : | | |
| Defendant. | : | | |

| | | | |
|---|---|---|---|
| SUNTRUST BANK, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 19-1830 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 16, 17, 22 |
| | : | | |
| CHARLES HENDERSON, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

DENYING DEFENDANT'S MOTION TO DISMISS IN CASE NO. 19-1631;
GRANTING CROSS-DEFENDANTS' MOTION TO SET ASIDE ENTRY OF DEFAULT, DENYING AS
MOOT PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM, AND GRANTING PLAINTIFF'S
MOTION TO INTERPLEAD DEPOSIT IN CASE NO. 19-1830

## I. INTRODUCTION

Two closely related but unconsolidated cases are presently before the Court. In the

primary action, the American Federation of Government Employees ("AFGE" or "the Union")

moves to dismiss a complaint brought by Ms. Avis Farmer, a former officer of AFGE Local

2607 ("the Local"). This complaint was one of three that Farmer originally brought against

AFGE following a consolidation of locals representing certain U.S. Department of Education

employees into a single nationwide local.  Farmer alleged in these related complaints that AFGE forced members to pay union dues to the new local, improperly attempted to seize the Local's funds, and put in jeopardy a settlement agreement from a previous lawsuit.  Of the three original complaints, two have been voluntarily dismissed.  AFGE now moves to dismiss the remaining suit for lack of jurisdiction, arguing that Plaintiff's claim arises from her membership in a federal sector labor union and is therefore preempted by Title VII of the Civil Service Reform Act, also referred to as the Federal Service Labor-Management Relations Statute ("FSLMRS"), 5 U.SC. § 7101 *et seq*.

Separately, the current possessor of the $212,663.23 in disputed union funds, SunTrust Bank, filed an interpleader action naming three defendants: Ms. Farmer, Dr. Charles Henderson (the former president of the Local), and AFGE itself.  As part of that action, AFGE filed a cross-claim against Farmer and Henderson, seeking a declaration that the funds rightfully belonged to the Union.  Farmer and Henderson did not answer or otherwise respond to the Union's cross-claim, and the Clerk entered default against them.  Now pending before the Court is a motion by Ms. Farmer and Dr. Henderson,[1] which seeks to set aside that entry of default.  Also pending in the interpleader action is a combined motion by SunTrust, in which the bank (1) seeks leave to deposit the disputed funds into the registry of the Court; (2) moves to be dismissed from the case; and (3) requests recoupment of its attorneys' fees and costs.

---

[1] It is unclear to the Court whether Dr. Henderson is participating in these pleadings, as he has not personally signed any of them and Ms. Farmer, as a *pro se* party, cannot represent him.  *See Ali v. U.S. Parole Comm'n*, No. 06-cv-0235, 2007 WL 902312, at *4 (D.D.C. Mar. 23, 2007) ("Although a plaintiff may appear *pro se* on his own behalf, he may not represent other *pro se* plaintiffs in federal court.") (citing 28 U.S.C. § 1654).

For the reasons set forth below, in the primary action, the Court denies AFGE's motion to dismiss the complaint. In the interpleader action, the Court grants Farmer and Henderson's motion to set aside the entry of default and SunTrust's combined motion.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Complaints filed in the Superior Court of the District of Columbia

On May 2, 2019, AFGE Headquarters issued a letter to AFGE Local 2607 stating that the local was "terminated, effective immediately." Compl. at 1 ("Farmer Compl."), No. 19-cv-1631, ECF No. 1-1 at 4. On May 14, 2019, Farmer filed three *pro se* complaints against AFGE.[2] On June 4, 2019, AFGE removed all three actions to this Court on the ground that the claims were preempted by federal law. *See* Notice of Removal at 2, No. 19-cv-1631, ECF No. 1. Subsequently, Farmer filed motions to dismiss two of the removed cases, which the Court granted. Order Granting Pl.'s Mot. Dismiss, No. 19-cv-1634, ECF No. 15; Order Granting Pl.'s Mot. Dismiss, No. 19-cv-1635, ECF No. 14.

In the remaining case (No. 19-cv-1631, which originated as Superior Court Case No. 2019 CA 003179B), Farmer appears to allege that AFGE tried to seize funds from the Local without properly revoking its charter or disbanding it. Farmer Compl. at 1 (alleging that "[d]ays prior" to receiving the letter's notice of the termination, "AFGE National proceeded to issue a notice to SunTrust bank (Accounts of Local 2607) to seize the funds"). The implication seems to be that this action violated AFGE's own constitution. *See id.* (citing AFGE National Constitution, Art. XIX, § 6). The complaint suggests that the Local was singled out for this

---

[2] The three Superior Court cases were: *Farmer v. AFGE*, Case No. 2019 CA 003179B; *Farmer v. Cox*, Case No. 2019 CA 003178B; and *Farmer v. AFGE*, Case No. 2019 CA 003196B. As indicated by the captions, AFGE National President J. David Cox, Sr., was named as an additional defendant in one of the complaints.

treatment because of its healthy finances.  *Id.* at 2 ("AFGE National did not proceed to ascertain funds from any other local due to the fact that Local 2607 has assets in excess of $200,000."). The complaint also refers to AFGE's alleged poor stewardship of union funds, its substantial debt, and history of misappropriation of funds.  *Id.*  As for relief, Farmer prays that "funds of local 2607 remain in tack [*sic*] for the members of Local 2607 and not COMINGLED with funds of other locals."  *Id.* at 1.  She further prays that the fees paid by former Local 2607 members— at least those in excess of the *per capita* dues required by the AFGE constitution—be "held in place for the membership's distribution in participation in AFGE training and events."  *Id.*

## B. Interpleader Complaint

According to the SunTrust's interpleader complaint, AFGE sent a letter on May 2, 2019 to SunTrust Bank,[3] holder of the Local's funds, claiming that the Local had been disbanded, requesting the closure of all of the Local's accounts, and instructing SunTrust to issue a check to AFGE for any funds in those accounts.  Compl. for Interpleader ¶ 15, No. 19-cv-1830, ECF No. 1.  SunTrust's complaint explains that Henderson and Farmer, who had signature authority on or opened those accounts, also sent a letter to SunTrust, requesting that any funds held in the Local's accounts not be turned over to anyone except them.  *Id.* ¶¶ 14, 16.  Facing these conflicting claims, SunTrust filed an interpleader action under 28 U.S.C. § 1335, naming Farmer, Henderson, and AFGE as defendants.  *Id.* ¶¶ 1–9.

In its answer to SunTrust's interpleader action, AFGE included both counterclaims and cross-claims.  Its counterclaim against SunTrust alleged that the bank breached its fiduciary duty

---

[3] Counsel for SunTrust represents that the current plaintiff is now actually Truist Bank, successor by merger to SunTrust.  *See* Reply Mem. in Supp. of Mot. to Interplead Deposit. at 1 n.1, ECF No. 25.  But following counsel's lead, the Court will continue to refer to the plaintiff as SunTrust.

to AFGE "because AFGE is the sole owner of the accounts and funds that were maintained by the now disbanded Local 2607." AFGE's Answer, Countercl., and Cross-cl. ("AFGE Answer") ¶ 51, No. 19-cv-1830, ECF No. 7. That counterclaim against SunTrust was voluntarily dismissed and is therefore no longer before the Court. *See* Notice of Voluntary Dismissal, No. 19-cv-1830, ECF No. 21.[4] AFGE's cross-claim against Farmer and Henderson, however, remained pending. It alleged that the pair had "lost all authority to act for or on behalf of Local 2607 after it was disbanded," AFGE Answer ¶ 59, and prays for the Court to "declare AFGE the sole owner of the disputed funds," *id.* ¶ 62. Farmer and Henderson filed a timely answer to SunTrust's interpleader complaint, but they never responded to AFGE's cross-claim. As a result, the Clerk of Court entered default against Farmer and Henderson. Clerk's Entry of Default, No. 19-cv-1830, ECF No. 15. Farmer and Henderson now move to set aside the default entry. Mot. to Set Aside Entry of Default, No. 19-cv-1830, ECF No. 16. SunTrust moves separately for leave to deposit the disputed funds into the registry of the Court, be dismissed from the case, and for attorneys' fees and costs to be subtracted from the disputed funds before the funds are deposited into the registry of the Court. *See* Mot. to Interplead Deposit, Dismissal of SunTrust Bank, and for Att'y Fees and Costs ("Combined Mot."), No. 19-cv-1830, ECF No. 22.

## III.  LEGAL STANDARDS

### A.  Federal Rule of Civil Procedure 12(b)(1)

When it lacks subject matter jurisdiction, a court must dismiss a case pursuant to Rule 12(b)(1). Federal courts are courts of limited subject matter jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*,

---

[4] In light of the voluntary dismissal, the Court will deny as moot SunTrust's motion to dismiss AFGE's counterclaim, No. 19-cv-1830, ECF No. 17.

511 U.S. 375, 377, (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction.").  To survive a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, a plaintiff bears the burden of establishing that a court has jurisdiction over her claim.  *See Moms Against Mercury v. Food & Drug Admin.*, 483 F.3d 824, 828 (D.C. Cir. 2007); *see also Am. Farm Bureau v. EPA*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000) ("Plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence.").  In determining whether jurisdiction exists, a court may "undertake an independent investigation to assure itself of its own subject matter jurisdiction" and "consider facts developed in the record beyond the complaint."  *CFA Inst. v. Andre*, 74 F. Supp. 3d 462, 465 (D.D.C. 2014) (quoting in part *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107–08 (D.C. Cir. 2005)).

A *pro se* complaint, additionally, is held to "less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  For example, in evaluating a motion to dismiss a *pro se* complaint, a district court must consider all the relevant filings, including the plaintiff's opposition to the motion to dismiss.  *See Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015) ("[A] district court errs in failing to consider a *pro se* litigant's complaint 'in light of' all filings, including filings responsive to a motion to dismiss") (quoting *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999)).  But even *pro se* litigants must comply with the Federal Rules of Civil Procedure.  *Jarrell v. Tisch*, 656 F. Supp. 237, 239 (D.D.C. 1987).  Moreover, "[a] pro se complaint, like any other, must present a claim upon which relief can be granted."  *Crisafi v. Holland*, 655 F.2d 1305, 1308 (D.C. Cir. 1981).  If there is no

jurisdictional basis for the cause of action in this Court, the complaint must be dismissed.  *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).

## B.  Motion to Set Aside Entry of Default

District courts have discretion to vacate "an entry of default for good cause."  Fed. R. Civ. P. 55(c).  In deciding whether to exercise that discretion, a court must consider "whether (1) the default was willful, (2) a set-aside would prejudice plaintiff, and (3) the alleged defense was meritorious."  *Gilmore v. Palestinian Interim Self–Gov't Auth.*, 843 F.3d 958, 966 (D.C. Cir. 2016) (quoting *Keegel v. Key W. & Caribbean Trading*, 627 F.2d 372, 373 (D.C. Cir. 1980)).  A party's willfulness in defaulting lies somewhere along a spectrum between "a case involving a negligent filing error, which is normally considered an excusable failure to respond, and a deliberate decision to default, which is generally not excusable."  *Int'l Painters & Allied Trades Union & Indus. Pension Fund v. H.W. Ellis Painting Co., Inc.*, 288 F. Supp 2d 22, 26 (D.D.C. 2003).  "To be prejudicial, the setting aside of a default or default judgment must result in greater harm than simply delaying the resolution of this case.  Rather, the standard is whether [plaintiff's] ability to pursue his claim will be hindered."  *TCI Group Life Ins. Plan v. Knoebber*, 244 F. 3d 691, 701 (9th Cir. 2001) (alteration in original).  That is, "the delay must result in tangible harm such as a loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion."  *Id.* (quoting *Thompson v. Am. Home Assurance Co.*, 95 F. 3d 429, 433–34 (6th Cir. 1996)).  And finally, for a defense to be considered meritorious, a party's allegations need only to "contain 'even a hint of a suggestion' which, proven at trial, would constitute a complete defense."  *Keegel*, 627 F.2d at 374 (citations omitted).

### C.  Interpleader

"Where a party in control of contested property, the stakeholder, makes no claim on the property and is willing to release it to the rightful claimant, interpleader allows him to put the money or other property in dispute into the court, withdraw from the proceeding, and leave the claimants to litigate between themselves the ownership of the fund in court." *Commercial Union Ins. Co. v. United States*, 999 F.2d 581, 583 (D.C. Cir. 1993) (quotation marks omitted).  An interpleader action may be brought in federal court under either the Federal Interpleader Act, 28 U.S.C. § 1335, or Rule 22 of the Federal Rules of Civil Procedure.  *Id*.  The requirements for a district court exercising jurisdiction over a statutory interpleader action are: (1) the value of the disputed money or property must exceed $500; (2) two or more adverse claimants are diverse; (3) and the plaintiff has deposited the property into the registry of the court.  28 U.S.C. § 1335.  "A plaintiff-stakeholder may be discharged from liability if it is disinterested and it meets the statutory requirements of 28 U.S.C. § 1335."  *Companion Prop. & Casualty Ins. Co. v. Apex Serv., Inc*., 76 F. Supp. 3d 212, 215 (D.D.C. 2014) (citations omitted).

# IV.  ANALYSIS

## A.  Motion to Dismiss Complaint in Case No. 19-cv-1631

AFGE moves to dismiss the complaint in the primary action for lack of subject matter jurisdiction under Rule 12(b)(1).[5]  Defs.' Mot. to Dismiss at 12, No. 19-cv-1631, ECF No. 6.[6]  In support, it offers a single, two-step argument.  First, AFGE characterizes the complaint as claiming a breach of the Union's duty of fair representation, which is considered an "unfair labor practice" under the FSLMRS.  *Id.* at 3.  Second, relying on the Supreme Court's decision in *Karahalios v. National Federation of Federal Employees*, 489 U.S. 527 (1989), AFGE argues that such a claim falls within the exclusive jurisdiction of the Federal Labor Relations Authority (FLRA).  *Id.* at 6, 11–12 (citing *Karahalios*, 489 U.S. at 532).  As a result, according to AFGE, Farmer's claims are "completely preempted by the FSLMRS."  *Id.* at 7.

To evaluate AFGE's argument, some additional background is helpful.  The FSLMR broadly governs labor-management relations in the federal government.  *See Steadman v. Governor, U.S. Soldiers' & Airmen's Home*, 918 F.2d 963, 964 n.1 (D.C. Cir. 1990); *Nat'l Treasury Employees Union v FLRA*, 691 F.2d 553, 554 (D.C. Cir. 1982).  Among other things, it provides that a "labor organization which has been accorded exclusive recognition" under the statute (that is, a union like AFGE) "is responsible for representing the interests of all employees

---

[5] Separately, AFGE moved to dismiss "all three actions" as to "Defendant Cox" under Rule 12(b)(6).  Defs.' Mot. to Dismiss at 3.  As discussed above, and as AFGE recognizes here, only one of the three Superior Court cases named Mr. Cox, the National President of AFGE, as a defendant.  *See* Defs.' Mot. to Dismiss at 4 ("The action in CA3178B appears to be have been brought against Defendants AFGE and NP Cox.  The other two actions, CA3179B and CA3196B, appear to have been brought solely against AFGE.").  Because Mr. Cox is not a defendant in the sole case now pending before the Court, the Court only discusses whether dismissal of the case is appropriate under Rule 12(b)(1).

[6] Because this document includes multiple separately-paginated elements (motion, memorandum, and a proposed order), the Court refers to the ECF-generated page numbers.

in the unit it represents without discrimination and without regard to labor organization

membership." 5 U.S.C. § 7114(a)(1). Furthermore, the statute specifies that it is an "unfair labor

practice for a labor organization" to, among other things, "fail or refuse to comply with any

provision of th[e] chapter." *Id.* § 7116(b). As AFGE notes, in *Karahalios*, the Supreme Court

relied on these provisions to confirm that the FSLMRS establishes a statutory duty of fair

representation, the breach of which constitutes an unfair labor practice. 489 U.S. at 531–32. The

Court further determined that the authority to enforce this duty rests exclusively with the FLRA

and that no parallel cause of action exists to enforce it in federal court. *Id.* at 532–33; *see also*

*Steadman*, 918 F.2d at 966 (indicating that a district court is barred "from entertaining an unfair

labor practice claim, over which the FLRA has exclusive jurisdiction") (citing *Karahalios*);

*Wood v. Am. Fed'n of Gov't Employees*, 255 F. Supp. 3d 190, 195 (D.D.C. 2017) ("[C]omplaints

that a labor organization has committed an 'unfair labor practice' are also preempted by the

CSRA, and must be filed with the [FLRA].") (citing *Karahaios* and *Steadman*).

    The key question, then, is whether AFGE is correct in characterizing Farmer's claim as

an alleged breach of AFGE's duty of fair representation or the commission of some other unfair

labor practice. *See Wood*, 255 F. Supp. 3d at 197 ("The CSRA does not preclude an employee

from suing his union under all circumstances. It only precludes claims alleging that the union

committed an unfair labor practice." (citations, quotations, and internal alterations omitted)).

The relevant analysis is whether a claim directly alleges that the union breached its duty of fair

representation or "otherwise appear[s] to implicate any unfair labor practices as that term is

defined under the CSRA." *Id.* When conducting this analysis, it is not the exact phrasing of a

complaint that matters, but the nature of the conduct at issue. *See Montplaisir v. Leighton*, 875

F.2d 1, 4 (1st Cir. 1989) ("Where labor-law preemption is an issue, creative labelling cannot

carry the day."); *Conejo v. Am. Fed'n of Gov't Emps., AFL-CIO*, 377 F. Supp. 3d 16, 25 (D.D.C.

2019) (rejecting defendant's "attempts to squeeze [plaintiff's] complaint into the reaches of the

FSLMRS [by] re-casting [plaintiff]'s claims as allegations of unfair labor practice").

In AFGE's telling, the crux of Farmer's allegation is that the Union "disparately treated

the former members of Local 2607" by only "ascertain[ing]" the Local's funds and not the funds

of other locals.  Defs.' Mot. Dismiss at 12.  According to AFGE, this "claim of disparate

treatment for former members of Local 2607 is undeniably an unfair labor charge because it is

alleging a breach of the duty of fair representation."  *Id.*  But this argument seems to assume the

conclusion and, in any case, sells the complaint somewhat short.  Farmer's reference to the

treatment of other locals is only part of the complaint, and seems to merely imply that the Local

was targeted because, unlike some other locals, it possessed substantial funds.  *See* Farmer

Compl. at 2 ("AFGE National did not proceed to ascertain funds from any other local due to the

fact that Local 2607 has assets in excess of $200,000.").  As discussed, other language in the

complaint suggests that AFGE tried to seize the funds before actually disbanding the Local,

thereby violating AFGE's own constitution.  *See* Farmer Compl. at 1.  Further context comes

from Farmer's opposition to the pending motion to dismiss, where Farmer makes no mention of

disparate treatment but reiterates that "AFGE tried to seize funds of membership prior to

terminating the Local" and that "AFGE National have not been good stewards' [*sic*] of funds or

provided sufficient oversight of pursuing funds illegally assessed by officers."  Pl.'s Opp'n to

Defs.' Mot. to Dismiss at 7, ECF No. 9.  In its motion to dismiss and reply, AFGE does not

explain how these central elements of Farmer's complaint amount to an alleged breach of the

duty of fair representation or otherwise fall within the scope of unfair labor practices as defined

by the FSLMRS in 5 U.S.C. § 7116(b).  For this reason, the Court is unable to grant AFGE's

motion to dismiss.  To be clear, the Court expresses no view on whether Farmer's claim is ultimately preempted by the FSLMRS or other aspects of federal law; it only determines that AFGE has failed to make the case for preemption here.  Accordingly, it denies the motion without prejudice, giving AFGE the opportunity to rearticulate any defenses to the complaint.[7]

## B.  Motions in the Interpleader Action in Case No. 19-cv-1830

### 1.  Motion to Set Aside Entry of Default

In the interpleader action, Farmer and Henderson argue that the Clerk's entry of default on AFGE's cross-claim should be set aside because of a mistaken assumption that their timely response to SunTrust's interpleader would suffice as a response to AFGE's cross-claim.  Mot. to Set Aside Entry Default ("Mot. Set Aside Default") at 2, No. 19-cv-1830, ECF No. 16.  In opposing, AFGE argues that Farmer and Henderson have failed to meet the governing "good cause" test, which requires the Court to consider "whether (1) the default was willful; (2) a set-aside would prejudice [the] plaintiff; and (3) the alleged defense was meritorious."  Cross-Claimant AFGE's Opp'n to Mot. to Set Aside Entry Default ("Opp'n Set Aside Default") at 3, No. 19-cv-1830, ECF No. 19 (quoting *Keegel*, 627 F.2d at 373).  In support of its position, AFGE submits that Henderson and Farmer's default was willful in that they made "no representation that they were unable to respond" to the crossclaim.  *Id.* at 4.  Moreover, AFGE contends that Henderson and Farmer did not, and could not, provide a meritorious defense since their right to act as officers of Local 2607 ceased to exist upon the Local's disbandment.  *Id.* at 6–7.  AFGE does not address the remaining factor in the good cause test: whether a set-aside

---

[7] It is unclear to the Court whether Farmer can, in fact, bring such a claim.  It appears that Farmer is bringing the claim, in substance, on behalf of the Local, but it is not clear that, as the former Vice President of the Local, she has that authority to do so, or even if she does, whether she can do so *pro se*.

would unduly prejudice the plaintiff (which is, in the context of a cross-claim, AFGE itself). Accordingly, the Court assumes a set-aside will not unfairly prejudice AFGE and focuses its analysis on willfulness and the merits of the alleged defense. For the reasons set out below, the Court grants Farmer and Henderson's motion to set aside the entry of default.

### a. Willfulness

While Famer and Henderson filed a response to SunTrust's Complaint for Interpleader, they claim a failure to respond to AFGE's cross-claim due to "mistake, excusable neglect, inadvertence, and under the ascertain [*sic*] that [AFGE's] statements in cross claim was addressed in response to SunTrust's Interpleader." Mot. Set Aside Default at 2. Although they do not explain their failure to respond in much detail, their confusion is understandable, given that *pro se* litigants are less likely to be familiar with the complexities of interpleader, compounded by the fact that the default here concerns a cross-claim. A court must take into consideration the fact that *pro se* litigants are untrained in the law and therefore hold them to "less stringent standards than those who are counseled by attorneys." *Whitehead v. Paramount Picture Corp.*, No. 99-7137, 2000 WL 33363291, at *2 (D.C. Cir. Apr. 19, 2000) (citations omitted) (per curiam). At the very least, Farmer and Henderson's timely response to SunTrust's complaint for interpleader suggests that they did not make a deliberate decision to default and believed, in good faith, that no further response to AFGE's filing was needed. Accordingly, the Court finds an absence of willfulness in Farmer and Henderson's default.

### b. Merits of Alleged Defense

AFGE's cross-claim, on which Farmer and Henderson defaulted, essentially asserts the following: that AFGE properly disbanded Local 2607; that Henderson and Farmer thereby ceased to be officers of Local 2607; and that they lost legal authority over the Local's funds after

the disbandment.  AFGE Answer at 10.  In their motion here, Farmer and Henderson include a

proposed response to these claims.  *See* Response to Cross Claim for Declaratory Judgment that

AFGE is Entitled to the Disputed Funds ("Proposed Response"), No. 19-cv-1830, ECF No. 16-1.

Farmer and Henderson contest the assertion that Local 2607 was properly disbanded and argue

that they "were still officers of Local 2607 on May 1, 2019, when AFGE began to pursue funds

from SunTrust bank."  *Id.* at 2.  Additionally, they note, the May 2 letter sent by AFGE to Local

2607 members uses the word "terminate" instead of "disband," and only the latter term is found

in the AFGE constitution.  *Id.*  Accordingly, they argue, AFGE never properly disbanded Local

2607.  *Id.*  Furthermore, they allege that Local members were never notified of the process,

provided for by the AFGE constitution, that allows local members to challenge a disbandment

within fifteen days of the suspension or revocation of a local's charter.  *Id.* (citing AFGE

National Constitution, Art. IX, § 5(c)). They argue that "if AFGE Local 2607 was indeed

'disbanded' then officer[s] and members should have been given notice" of this provision.  *Id.*

On these grounds, Farmer and Henderson assert their continued authority over the disputed funds

held by SunTrust Bank.  *Id.* at 4 (seeking a declaration that "Henderson and Farmer are owners

of the disputed funds").

While the Court is unsure of its ultimate merit, Farmer and Henderson's defense strikes

the Court as plausible.  If the Union improperly disbanded the local, Farmer and Henderson

would still be officials and presumably would retain authority over the funds in their official

capacities.  While the success of their defense will likely hinge on the details of AFGE's

constitution and relevant provisions of federal labor law, the Court does not find it appropriate to

probe such questions at this stage.  After all, Farmer and Henderson's burden here is low: their

allegations must only "contain 'even a hint of a suggestion' which, proven at trial, would constitute a complete defense." *Keegel*, 627 F.2d at 374 (citations omitted).

Particularly given Farmer and Henderson's *pro se* status and that "strong policies favor resolution of disputes on their merits," *Jackson v. Beech*, 636 F.2d 831, 835 (D.C. Cir. 1980), the Court concludes that Farmer and Henderson have shown good cause to set aside the entry of default.

### 2. SunTrust's Combined Motion

In its motion, SunTrust requests "that it be permitted to deposit the funds into the registry of the Court, recover its attorneys' fees and costs as allowed by law, and be dismissed from this action." Mem. in Supp. of Combined Mot. ("Combined Mot. Mem.") at 1, No. 19-cv-1830, ECF No. 22-1. AFGE does not oppose SunTrust's request to be dismissed from the case or interplead the disputed funds, but does take issue with the request for attorneys' fees and costs. AFGE's Opp'n to Pl. SunTrust Bank's Mot. for Attorney Fees ("AFGE Opp'n to Combined Mot.") at 1, No. 19-cv-1830, ECF No. 23. Farmer and Henderson, for their part, are in full support of SunTrust's motion. *See* Resp. to Combined Mot. at 1–2 ("Farmer & Henderson Resp. to Combined Mot."), No. 19-cv-1830, ECF No. 27.

#### a. Leave to Deposit Funds

Most interpleader actions proceed in two stages. "The first stage involves a determination of whether the plaintiff has met the statutory prerequisites for the invocation of the interpleader remedy," while "[t]he second stage . . . consists of a determination of the respective rights of the claimants to the disputed property." *Star Ins. Co. v. Cedar Valley Express, LLC*, 273 F. Supp. 2d 38, 40 & n.2 (D.D.C. 2002). To recall, "a statutory interpleader action requires that: (1) the plaintiff have custody of the disputed property, which must exceed $500 in value;

(2) the plaintiff deposit the disputed property into the registry of the court; and (3) two or more

adverse claimants of diverse citizenship claim or may claim an interest in the disputed property."

*Id.* at 41 (citing 28 U.S.C. § 1335).

Here, although SunTrust has not yet actually deposited the funds into the registry of the

court, it is apparent that the statutory requirements will be satisfied: SunTrust has custody over

the funds, the value of the disputed funds is $212,663.23, and at least two of the adverse

claimants are diverse (AFGE is headquartered in Washington, D.C., and Henderson and Farmer

are both residents of Maryland). *See* Combined Mot. Mem. at 5 (citing Compl. for Interpleader

¶¶ 1–5). Accordingly, and noting the parties' agreement on the issue, the Court recognizes

jurisdiction over this action and grants SunTrust's motion for leave to deposit the disputed funds

into the registry of the court, using the procedures provided by Local Civil Rule 67.1.

### b. *Dismissal from Case and Related Injunctive Relief*

Beyond seeking leave to deposit the disputed funds, SunTrust seeks additional relief: (1)

to be dismissed from the case, (2) an order "discharging it from further liability," and (3) an

order "enjoying any further action against it with respect to the Funds." Combined Mot. Mem. at

6.

A plaintiff-stakeholder like SunTrust "may be discharged from liability if it is

disinterested and it meets the statutory requirements of 28 U.S.C. § 1335." *Companion*

*Property*, 76 F. Supp. 3d at 215 (citations omitted); *see also Star Ins.*, 273 F. Supp. 2d at 40 n.2

(D.D.C. 2002) (noting that if "a court determines that interpleader is appropriate [under § 1335],

it may discharge the stakeholder-plaintiff from the action if it is disinterested in the distribution

of the [interpleader funds]"). As discussed above, the statutory requirements will be satisfied

once SunTrust deposits the funds with the registry of the Court. Additionally, SunTrust is a

disinterested party, as it "does not make any claim to the Funds other than ask for an award of attorneys' fees and costs to be withdrawn from them."  Combined Mot. Mem. at 6; *see also Companion Property*, 76 F. Supp. 3d at 215 (noting that a claim to attorneys' fees and costs does not make an otherwise disinterested stakeholder an interested one) (citations omitted).  As a result, the Court finds it appropriate, once the funds are deposited, to discharge SunTrust from further liability in relation to the disputed funds and dismiss it from the case.

Additionally, SunTrust asks the court to exercise its authority under 28 U.S.C. § 2361 to enjoin "[d]efendants from instituting or prosecuting any action that may affect the Funds involved in this case."  Combined Mot. Mem. at 7.  The section relied upon by SunTrust provides that, in a statutory interpleader action, "a district court may issue its process for all claimants and enter its order restraining them from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court."  28 U.S.C. § 2361.  Subsequently, the district court "shall hear and determine the case, and may discharge the plaintiff from further liability, make the injunction permanent, and make all appropriate orders to enforce its judgment."  *Id.*

SunTrust suggests that an injunction is "particularly appropriate here as there have been multiple lawsuits between the parties litigated in this Court arising out of the dispute between AFGE, Dr. Henderson, and Farmer."  Combined Mot. Mem. at 7.  And courts have indeed recognized that "[a] permanent injunction [under 28 U.S.C. § 2361] is necessary to give meaning to the plaintiff's discharge and to encourage interpleader actions."  *Auto Parts Mfg. Mississippi, Inc. v. King Const. of Houston, L.L.C.*, 782 F.3d 186, 192 (5th Cir. 2015).  Additionally, AFGE, Farmer, and Henderson do not object to such relief.  Accordingly, the

Court will enjoin Defendants (that is, Farmer, Henderson, and AFGE) from instituting or prosecuting any subsequent state or federal action that may affect the funds involved in this case.

### c. Attorneys' Fees and Costs

"A court may 'award attorneys' fees and costs [from the interpleader funds] to [a disinterested] plaintiff stakeholder in an interpleader action[ ] whenever it is fair and equitable to do so.'" *Companion Property*, 76 F. Supp. 3d at 217 (citations omitted).  The following factors are relevant in calculating attorneys' costs and fees: "1) whether the case is simple or involved; 2) whether the stakeholder performed any unique services for the claimants or the court; 3) whether the stakeholder acted in good faith and with diligence; 4) whether the services rendered benefited the stakeholder; and 5) whether the claimants improperly protracted the proceedings." 7 Charles Alan Wright et al., *Federal Practice and Procedure* § 1719 (3d ed. 2020) ("Wright & Miller") (footnotes omitted).

SunTrust submits that an award of attorneys' fees and costs is warranted, and that the rates charged by counsel are reasonable.  Combined Mot. Mem. at 9.  AFGE opposes SunTrust's request on the basis that SunTrust "could not have reasonably believed Henderson and Farmer's claim to have merit."  AFGE Opp'n to Combined Mot. at 4.  Moreover, AFGE submits that this matter is not complex, that it is within SunTrust's ordinary course of  business to deal with such disputes, and that SunTrust "cannot identify anything it has done in this matter that benefits the stakeholders." *Id.* at 5.

Under the circumstances, the Court cannot accept AFGE's submission that SunTrust is not entitled to any award of attorneys' fees and costs.  The fact that Farmer and Henderson, not AFGE, were the bank's customers and had signing authority over the Local's accounts belies the contention that SunTrust should have immediately (1) recognized their claims were baseless and

(2) provided AFGE with access to the funds.  Additionally, this was a procedurally complex matter involving numerous related state and federal cases and complicated issues of federal preemption.  Moreover, the nature of the dispute contributed to the matter's legal complexity; a contentious post-consolidation, intra-union dispute is far less commonplace than, for instance, an ordinary dispute among claimants to a life-insurance policy.  *See, e.g.*, *Unum Life Ins. Co. of America v. Kelling*, 170 F. Supp. 2d 792, 795 (M.D. Tenn. 2001) (rejecting an insurance company's petition for attorneys' fees on the basis that conflicting claims to insurance benefits were inevitable during the course of the insurer's business).  Additionally, there is nothing to suggest that SunTrust failed to act in good faith and with diligence in advancing the matter.  And finally, the Court disagrees with AFGE's contention that SunTrust has done nothing to benefit the stakeholders.  The fees and costs sought by SunTrust all relate ultimately to resolving the dispute over the funds.  "[A]ll stakeholders benefit by being able to use interpleader," and the fact that a stakeholder particularly "benefits by being discharged . . . does not negate the equitable considerations supporting an award of attorney fees."  Wright & Miller § 1719.

Beyond these objections, AFGE more narrowly opposes SunTrust's request for attorneys' fees incurred in responding to AFGE's counterclaim.  AFGE Opp'n to Combined Mot. at 5.  AFGE's argument appears to proceed in two parts. First, AFGE argues that the party seeking fees in an interpleader action must be "successful in its action to be eligible to recover fees."  *Id.* (citing *Murphy v. Travelers Ins. Co*., 534 F.2d 1155, 1164 (5th Cir. 1976)).  Second, AFGE reasons that "[a] party cannot be successful, and therefore collect fees, on a voluntarily dismissed claim."  *Id.*  (citation omitted).

The argument falters at the first step.  *Murphy*, the case relied upon by AFGE, was simply making the general observation that fees are often awarded to the stakeholder when an

interpleader action is successful.  *See* 534 F.2d at 1164 ("[A]s a general rule, when an interpleader action is successful, the court often awards costs, as well as attorney's fees, to the stakeholder.").  It does not imply that that a stakeholder must always be "successful," much less successful in every dimension of an interpleader suit, in order to receive attorneys' fees.  The remaining cases cited by AFGE (supporting the general rules that fees are only due to a prevailing party and that a voluntarily dismissed party is not a prevailing party) are not interpleader cases, and thus seem of limited applicability here.

For these reasons, the Court concludes that it retains the discretion to make a fee award as long as it is generally "fair and equitable to do so."  *Companion Property*, 76 F. Supp. 3d at 217 (citation omitted).  And here, the Court finds it appropriate to include fees incurred in defending AFGE's counterclaim.  To recall, AFGE counterclaimed against SunTrust on the grounds that SunTrust breached its fiduciary duty to AFGE by not providing it with access to the disputed funds.  AFGE Answer at 9.  It appears that SunTrust did nothing to invite such a counterclaim beyond refusing to hand over the funds to AFGE and seeking to resolve the competing claims through interpleader.  Indeed, if anything, AFGE improperly protracted proceedings by introducing a counterclaim that was largely duplicative of the underlying merits in the interpleader action.  *See id.* at 9 (as relief for SunTrust's alleged breach of fiduciary duty, seeking an order that SunTrust "immediately disburse the disputed funds to AFGE").  Thus, although SunTrust filed the interpleader action to extract itself from the dispute over the funds, AFGE's counterclaim forced SunTrust to insert itself even more deeply into the dispute, requiring it to expend even greater resources to extract itself.  Accordingly, even though AFGE defended against the counterclaim out of self-interest, it was forced to do so by AFGE's actions and the Court finds it equitable to include the associated fees in the overall fee award.

To determine the total amount of SunTrust's fee award, the Court begins with SunTrust's latest request for $13,363.41 in total costs and fees.  *See* Suppl. Aff. of S. Mohsin Reza at 4, No. 19-cv-1830, ECF No. 25-1.  This is based on 35.6 hours of attorney work billed at $340/hour and 3.2 hours of paralegal work billed at $150/hour, plus additional costs of $779.41.  *Id.* at 3.  These costs, hours, and rates appear reasonable to the Court, and no party objects to them (beyond the objections of AFGE that were noted and rejected above).  *Cf. Companion Property*, 76 F. Supp. 3d at 217 ("Under the circumstances, the magistrate judge fairly concluded that $12,000.00 is a reasonable amount to award in attorneys' fees and costs to Companion, especially where Apex and Companion agreed to it, and Apex is the sole remaining interpleader defendant.").  Accordingly, the Court will award SunTrust $13,363.41 in total costs and fees, to be deducted from the interpleaded funds before they are deposited in the registry of the Court.[8]

## V.  CONCLUSION

For the foregoing reasons, AFGE's motion to dismiss the complaint in Case No. 19-1631 is **DENIED WITHOUT PREJUDICE**.  In Case No. 19-1831, Farmer and Henderson's motion to set aside the entry of default is **GRANTED**, SunTrust's motion to dismiss AFGE's counterclaim is **DENIED AS MOOT**, and SunTrust's combined motion is **GRANTED**.  This Memorandum Opinion will be filed in both cases, and separate orders consistent with this Memorandum Opinion will be separately and contemporaneously issued.

Dated:  May 29, 2020                                          RUDOLPH CONTRERAS
                                                              United States District Judge

---

[8] Because the Court concludes that the award of attorneys' fees is justified under the law of interpleader, it does not address SunTrust's additional argument that the governing account agreements contractually entitle it to attorneys' fees incurred in resolving disputes over funds with third-parties.  *See* Combined Mot. Mem. at 8.